## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE NEWS-GAZETTE, INC., *et al.*,[1] | Case No. 19-11901 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos. 15, 18, 66, 69, 70, and 118** |

## ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF SUBSTANTIALLY ALL OF THE NEWS-GAZETTE, INC. AND D.W.S., INC. TO CHAMPAIGN MULTIMEDIA GROUP, LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**")[2] of The News-Gazette, Inc. ("**News-Gazette**") and D.W.S., Inc. (each a "**Debtor**" and, collectively, the "**Debtors**"), filed in the above-captioned cases on August 30, 2019, Docket No. 15, for, among other things, entry of an order (this "**Sale Order**") (A) authorizing and approving Debtors' entry into that certain Asset Purchase Agreement with Champaign Multimedia Group, LLC ("**Purchaser**"), together with all related documents, agreements, exhibits, schedules, and addenda thereto (as may be amended, the "**Purchaser APA**"), a copy of which is attached hereto as **Attachment 1**, approving the sale (the "**Sale**") of substantially all of Debtors' assets as set forth in the Purchaser APA (collectively, the "**Purchaser Purchased Assets**"), free and clear of all liens, claims, encumbrances and interests of any kind to Purchaser; (B) authorizing the assumption and assignment of certain executory contracts and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  The News-Gazette, Inc. (0894) and D.W.S., Inc. (7985).  The Debtors' headquarters are located at 15 East Main Street, Champaign, Illinois 61820.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Purchaser APA (*as defined below*) or, if not defined in the Purchaser APA, the Sale Motion.

unexpired leases (the "**Assigned Contracts**")[3] of Debtors that may be assumed and assigned to Purchaser in connection with the Sale, subject to and at the time of the Closing of the Sale; and (C) granting related relief; and the Court having previously entered the Order: (I) Approving Bid Procedures for Sale of Substantially All of the Debtors' Assets; (II) Approving Designation of Stalking Horse Bidder for Sale of Debtors' Assets; (III) Approving Certain Bid Protections for the Stalking Horse; (IV) Authorizing and Scheduling an Auction; (V) Scheduling Hearing for Approval of the Sale of Assets Free and Clear of Liens and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; (VI) Approving Certain Deadlines and the Form, Manner, and Sufficiency of Notice; and (VII) Granting Other Related Relief, Docket No. 66, on September 18, 2019, (the "**Bid Procedures Order**"); and the Court having conducted the Sale Hearing on October 2, 2019; and all parties in interest having been heard or having had the opportunity to be heard regarding the Purchaser APA; and it appearing that adequate and proper notice of the Sale Motion has been given and that no other or further notice need be given; and the Sale Hearing having been held to consider the relief requested in the Sale Motion; and upon the record of the Sale Hearing and all of the proceedings held before the Court; and the Court having found and determined that the relief sought in the Sale Motion is in the best interests of Debtors, their estate, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Sale Motion, and the testimony adduced at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

---

[3]    Unless context otherwise requires, the term "**Assigned Contracts**" as used herein shall refer only to those agreements listed on Schedule 1.2(c) of the Purchaser APA, as such listing may be amended through Closing.

**IT IS HEREBY FOUND AND DETERMINED THAT:[4]**

A.      <u>Jurisdiction</u>.  The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested in the Sale Motion pursuant to 28 U.S.C. §157(b)(1).

B.      <u>Venue</u>.  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §1408. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

C.      <u>Statutory Predicates</u>.  The statutory and legal predicates for the relief requested in the Sale Motion are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 6004-1.

D.      <u>Notice</u>.  Notice of the proposed Sale of the Purchaser Purchased Assets and the Sale Hearing has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the District of Delaware; (ii) counsel for the Committee, if appointed; (iii) the District Director of Internal Revenue; (iv) parties under collective bargaining agreements, including without limitation the Printing, Publishing and Media Workers Sector of the Communications Workers of America, Champaign-Urbana Typographical Union Local No. 444 for the Circulation District Managers and the Printing, Publishing and Media Workers Sector of the Communications Workers of America, Champaign-Urbana Typographical Union Local No. 444/14407 for the Newsroom; (v) multiemployer pension plans in which or to which a Debtor or any of its Affiliates is or was participating or contributing, including without limitation the CWA/ITU Negotiated Pension Plan and the GCIU-Employer Retirement Fund; (vi) all entities known, as of the date of this Sale Motion, to have a lien, or to have asserted a lien, on the Purchaser Purchased Assets; (vii) all Debtors' creditors; and (viii) all other parties requesting notice in the

---

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

Debtors' chapter 11 cases (collectively, the "**Notice Parties**").  Notice of the Sale was (a) uploaded to the Court's Electronic Access to Sales Information system, (b) was published in the *News-Gazette* on September 19, 2019, and (c) posted to the Debtors' claims and noticing agent's website.

E.      <u>Notice Sufficient</u>.  Based upon the affidavits of service previously filed with the Court and the evidence presented at the Sale Hearing, adequate and sufficient notice of the Sale Motion, Sale Hearing, the Sale, and the transactions contemplated thereby, including without limitation, the assumption and assignment of the Assigned Contracts to Purchaser, has been provided in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9006 and Local Bankruptcy Rule 9006-1. A reasonable opportunity to object and be heard with respect to the Sale, the Sale Motion and the relief requested therein, the assumption and assignment of the Assigned Contracts to Purchaser and the amounts necessary under section 365(b) of the Bankruptcy Code to cure defaults thereunder, as such amounts have been transmitted pursuant to a written notice delivered to the applicable counterparty, has been afforded to all interested persons and entities, including the Notice Parties.

F.      <u>Purchaser Purchased Assets Property of the Estates</u>.  The Purchaser Purchased Assets sought to be transferred and/or assigned by Debtors to Purchaser pursuant to the Purchaser APA are property of Debtors' estate and title thereto is vested in Debtors' estate.

G.      <u>Sufficiency of Marketing</u>.  Based upon the record of the Debtors' chapter 11 cases, all creditors and other parties in interest and all prospective buyers have been afforded a reasonable and fair opportunity to bid for the Purchaser Purchased Assets. Under the circumstances, Debtors and its professionals have adequately and appropriately marketed the Purchaser Purchased Assets.

H.    <u>Corporate Authority</u>.  Subject to the entry of this Sale Order, Debtors:  (i) have full power and authority to execute the Purchaser APA and all other documents contemplated thereby; (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Purchaser APA (collectively, the "**Transactions**"), and (iii) have taken all company action necessary to authorize and approve the Purchaser APA and the sale of the Purchaser Purchased Assets, and any actions required to be performed by Debtors in order to consummate the Transactions contemplated in the Purchaser APA. No consents or approvals, other than those expressly provided for in the Purchaser APA or this Sale Order, are required for Debtors to consummate the Sale.

I.    <u>Arm's-Length Sale and Purchaser's Good Faith</u>.    The Purchaser APA was negotiated and is undertaken by Debtors and Purchaser at arm's-length without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code. Neither Purchaser nor any of its affiliates, members, officers, directors, or shareholders is an "insider" of either of the Debtors as that term is defined by section 101(31) of the Bankruptcy Code. Purchaser (i) recognized that Debtors were free to deal with any other party interested in acquiring the Purchaser Purchased Assets and (ii) willingly subjected the Purchaser Purchased Assets to a competitive bidding process in accordance with the Bid Procedures Order. All payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed, Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction, and no common identity of directors or controlling stockholders exists between Purchaser and the Debtors. As a result of the foregoing, Purchaser is a "good faith buyer" within the meaning of section 363(m) of the Bankruptcy Code, and as such, is entitled to all of the protections afforded thereby, including in the event this Sale Order or any portion thereof

is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the Sale specifically and these Chapter 11 Cases generally.

J.       Sale Highest or Best Offer.   The offer submitted by Purchaser for the Purchaser Purchased Assets as reflected in the Purchaser APA, including the form and total consideration to be realized thereunder, is the highest and best offer for the Purchaser Purchased Assets. No other person or entity or group of persons or entities has offered to purchase the Purchaser Purchased Assets for an amount that would provide greater value to Debtors than Purchaser, including through the reduction of claims against Debtors' estate. The Court's approval of the Sale Motion with respect to the Purchaser Purchased Assets, the Purchaser APA, and the Transactions, maximize Debtors' recovery for the Purchaser Purchased Assets, and, thus, is in the best interests of Debtors and their estates, creditors and all other parties in interest.

K.       No Fraudulent Transfer.   The purchase price set forth in the Purchaser APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable law, and may not be avoided under section 363(n) or any other section of the Bankruptcy Code. The Purchaser APA was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither Debtors nor Purchaser has entered into the Purchaser APA or is consummating the Sale with any fraudulent or otherwise improper purpose.

L.      <u>No Liability under Section 363(n)</u>.  Neither Debtors nor Purchaser engaged in any conduct that would cause or permit the Purchaser APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

M.      <u>Transfer of Purchaser Purchased Assets Free and Clear</u>.  Debtors are the sole and lawful owners of the Purchaser Purchased Assets. Pursuant to section 363(f) of the Bankruptcy Code, and except as otherwise provided in the Purchaser APA and this Sale Order, and except for Assumed Liabilities, the transfer of each of the Purchaser Purchased Assets to Purchaser will be, as of the Closing, a legal, valid, and effective transfer of the Purchaser Purchased Assets, which transfer vests or will vest Purchaser with all right, title, and interest of Debtors to the Purchaser Purchased Assets free and clear of, among other things, (i) all Liens, claims, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, royalties, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, right of use or permission, subleases, leases, conditional sale arrangements, (ii) all claims as defined in section 101(5) of the Bankruptcy Code) including all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of Debtors or any other person prior to Closing, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of Debtors' chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and

pension claims, including but not limited to the Withdrawal Liabilities, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material on non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of Debtors' Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, successor liability or otherwise (clauses (i), (ii), and (iii), together, the "**Interests**").

N.        <u>Free and Clear Findings Required by Purchaser</u>.  Purchaser would not have entered into the Purchaser APA and would not consummate the transactions contemplated thereby if the Sale was not free and clear of any and all Interests (other than Assumed Liabilities) pursuant to section 363(f) of the Bankruptcy Code, or if Purchaser would, or in the future could, be liable for any of such Interests.  Effective upon the Closing, Purchaser shall not be responsible for any Interests (other than Assumed Liabilities), including in respect of the following:  (i) labor or employment agreements; (ii) all mortgages, deeds of trust, and security interests; (iii) any intercompany loans and receivables between the Debtors and any non-Debtor affiliate; (iv) any welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of Debtors, any affiliate of Debtors, or any member of Debtors' "control group;" (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as

amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C §§ 2101 *et. seq*., or (l) any other state or federal benefits or claims relating to any employment with Debtors or any of its predecessors; (vi) Interests arising under any environmental, health and safety laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing and any liabilities of Debtors other than the Assumed Liabilities; (vii) any bulk sales Tax, bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all Interests arising out of violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. A sale of the Purchaser Purchased Assets other than one free and clear of all Interests would yield substantially less value for Debtors' estate, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Purchaser APA maximizes Debtors' recovery on the Purchaser Purchased Assets, and, thus, is in the best interests of Debtors and its estate, creditors and all other parties in interest.

      O.    <u>Satisfaction of Section 363(f) Standards</u>. Debtors may sell the Purchaser Purchased Assets free and clear of all Interests because, with respect to each creditor or other person or entity asserting an Interest, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Sale Motion with respect to the

Purchaser Purchased Assets are deemed to have consented to the Sale Motion with respect to the Purchaser Purchased Assets and to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

P.    <u>No Successor Liability</u>.    Purchaser is not holding itself out to the public as a continuation of Debtors and is not an "insider" or "affiliate" of Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between Purchaser and Debtors. The conveyance of the Purchaser Purchased Assets does not amount to a consolidation, merger or *de facto* merger of Purchaser and Debtors and/or Debtors' estates, there is no substantial continuity between Purchaser and Debtors, there is no continuity of enterprise between Debtors and Purchaser, Purchaser is not a joint employer or co-employer with Debtors or a mere continuation of Debtors or their estates, and Purchaser does not constitute a successor to Debtors or their estates.  Purchaser's acquisition of the Purchaser Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. Purchaser's operations shall not be deemed a continuation of Debtors' business as a result of the acquisition of the Purchaser Purchased Assets. Purchaser would not have acquired the Purchaser Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

Q.    <u>Assignment Objection Procedures</u>.  Prior to the filing of the Sale Motion, Purchaser had not indicated to Debtors which Assigned Contracts, if any, Purchaser would request to be assumed and assigned as part of the Purchaser APA. Therefore, to conserve the parties' and the Court's resources, as well as to avoid unnecessary cost and potential confusion to counterparties to the Assigned Contracts (each a "**Counterparty**" and collectively, the "**Counterparties**"), Debtors have requested that the Court approve the Assignment Objection Procedures (as defined

below). Such Assignment Objection Procedures are fair, reasonable, and protect the interests of all Counterparties to Assigned Contracts.

R.      Assigned Contracts.    Each and every provision of the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assigned Contract has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code. There shall be no rent accelerations, assignment fees, increases or any other fees charged to Debtors or Purchaser as a result of the assumption and/or assignment of the Assigned Contracts. All Counterparties of the Assigned Contracts who did not or do not timely file an objection to the assumption and assignment of the Assigned Contract(s) to which they are counterparty are deemed to consent to the assumption by Debtors of their respective Assigned Contract(s) and the assignment thereof to Purchaser, and Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof. Upon the assignment and sale to Purchaser, the Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to Purchaser, notwithstanding any provision in the Assigned Contracts prohibiting or otherwise restricting assignment or transfer. Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assigned Contracts to Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to

Purchaser are an integral part of the Sale and, accordingly, their assumption and assignment are reasonable and an enhancement to the value of Debtors' estate.

S.      <u>Cure/Adequate Assurance</u>.  Pursuant to the Purchaser APA, the Cure Amounts will be paid by Purchaser as "**Assumed Liabilities**" under the Purchaser APA. Subject to any objections submitted in accordance with the Assignment Objection Procedures (as defined below), Purchaser has demonstrated adequate assurance of future performance of all Assigned Contracts within the meaning of section 365 of the Bankruptcy Code, including its promise to perform Debtors' obligations under the Assigned Contracts for periods on and after the Closing. The Cure Amounts are deemed the amounts necessary to "cure" all "defaults" (each, within the meaning of section 365(b) of the Bankruptcy Code) under such Assigned Contracts. Except as provided by the Assignment Objection Procedures (*as defined below*), any objections to the Cure Amounts, to the extent not otherwise resolved, are hereby overruled. To the extent that any Counterparty failed to timely object to its Cure Amount or the assignment of its Assigned Contract or to raise any other alleged default or breach of contract, such Counterparty is deemed to have consented to such Cure Amount and to the assignment of its respective Assigned Contract(s) to Purchaser and to have waived any other defaults or breaches. The payment of the Cure Amounts as provided in the Purchaser APA is appropriate and is deemed to fully satisfy Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by Debtors, and the assignment by Debtors to Purchaser, of each of the Assigned Contracts.

T.    <u>Purchaser Purchased Assets Assignable</u>.  Any contractual provision or applicable non-bankruptcy law that purports to prohibit, restrict, or condition assignment of any of the Purchaser Purchased Assets has been satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

U.    <u>Sale as Exercise of Business Judgment</u>.  Entry into and consummation of the Purchaser APA constitute the exercise by Debtors of sound business judgment, and such acts are in the best interests of Debtors, their estates and creditors, and all parties in interest. The Court finds that Debtors have articulated good and sufficient business reasons justifying the Sale. Additionally: (i) the Purchaser APA constitutes the highest and best offer for the Purchaser Purchased Assets; (ii) the Purchaser APA and the closing thereon presents the best opportunity to realize the maximum value of the Purchaser Purchased Assets and avoid a decline and devaluation of the Purchaser Purchased Assets; (iii) there is risk of deterioration of the value of the Purchaser Purchased Assets if the Sale is not consummated promptly; and (iv) the Purchaser APA and the closing thereon will provide a greater recovery for Debtors' creditors than would be provided by any other presently available alternative. Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

V.    <u>Compelling Reasons for an Immediate Sale</u>.  Good and sufficient reasons for approval of the Purchaser APA have been articulated by Debtors. Debtors have demonstrated compelling circumstances for the Sale outside: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (b) a plan of reorganization, in that, among other things, the immediate consummation of the Sale is necessary and appropriate to preserve and to maximize the value of Debtors' estates. To maximize the value of the Purchaser Purchased Assets

and to preserve the viability of the business to which the Purchaser Purchased Assets relate, it is essential that the Sale occur promptly. Time is of the essence in consummating the Sale.

      W.    <u>No Sub Rosa Plan</u>.  The Sale does not constitute a *sub rosa* chapter 11 plan. The Sale neither impermissibly restructures the rights of Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization for Debtors.

      X.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. §158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and expressly directs entry of judgment as set forth herein.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

      1.    <u>Sale Motion Granted</u>.  The relief requested in the Sale Motion with respect to the Purchaser Purchased Assets is GRANTED and the Sale is approved, all as set forth in this Sale Order.

      2.    <u>Objections Overruled</u>.  All objections with regard to the relief sought in the Sale Motion with respect to the Assets that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein or on the record at the Sale Hearing are hereby overruled on the merits, with prejudice.

      3.    <u>Approval</u>.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Purchaser APA, the assumption and assignment of the Assigned Contracts to Purchaser as of the Closing Date, and the sale of the Purchaser Purchased Assets and the other transactions contemplated thereby are hereby approved in all respects. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Debtors, Purchaser, and each of their respective officers, agents, professionals and other representatives are authorized and directed to perform their obligations

under, and comply with the terms of, the Purchaser APA, and to consummate the Sale, including the sale, transfer and assignment of all of Debtors' right, title and interest in the Purchaser Purchased Assets to Purchaser free and clear of any and all Interests (other than the Assumed Liabilities) in accordance with the terms of the Purchaser APA and this Sale Order.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Debtors, Purchaser and each of their respective officers, directors, employees, professionals, agents and other representatives are each hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the sale of the Purchaser Purchased Assets to Purchaser and the Closing of the Sale, pursuant to the Purchaser APA and this Sale Order, (b) assume and assign the Assigned Contracts to be assumed and assigned to Purchaser as of the Closing Date, and (c) perform, consummate, implement and close fully the Purchaser APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchaser APA. Debtors and Purchaser are hereby authorized and directed to perform their respective covenants and undertakings as provided in the Purchaser APA prior to or after the Closing of the Sale without further order of the Court. Purchaser and Debtors shall have no obligation to close the Sale except as is contemplated and provided for in the Purchaser APA.

4.      _Transfer Free and Clear_.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, upon the Closing, neither Purchaser or any of its Affiliates nor any of their respective successors and assigns shall have any liability for any Interest, except for Assumed Liabilities, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether as a successor, vicariously or otherwise, of any kind, nature or character whatsoever, including for any Interests arising under, without limitation:   (i) any labor or employment agreements;  (ii) all mortgages, deeds of trust and security interests; (iii) any

intercompany loans and receivables between the Debtors and any non-Debtor affiliate; (iv) any welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any affiliate of Debtors, or any member of Debtors' "control group", including but not limited to the Withdrawal Liabilities; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C §§ 2101 et. seq., or (l) any other state or federal benefits or claims relating to any employment with Debtors or any of its predecessors; (vi) Interests arising under any environmental, health and safety laws with respect to any assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date and any liabilities of Debtors other than the Assumed Liabilities; (vii) any bulk sales Tax, bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all Interests arising out of violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. All Interests, to the extent not paid in full at Closing, shall attach to the proceeds

of the sale of the Purchaser Purchased Assets, in the order of priority, with the same validity, force and effect which they now have as against the Purchaser Purchased Assets, subject to any rights, claims and defenses that Debtors and other parties in interest may possess with respect thereto.

5.      Surrender of Possession.  Any and all Purchaser Purchased Assets in the possession or control of any person or entity, including any vendor, supplier or employee of Debtors, shall be transferred to Purchaser free and clear of all Interests, except for Assumed Liabilities, and shall be delivered to Purchaser and deemed delivered at the time of Closing (or such other time as provided in the Purchaser APA).

6.      Valid Transfer.  Effective upon the Closing, the transfer to Purchaser of Debtors' rights, title and interests in the Purchaser Purchased Assets pursuant to the Purchaser APA shall be, and hereby is deemed to be, a legal, valid and effective transfer of Debtors' right, title and interest in the Purchaser Purchased Assets, and vests with or will vest in Purchaser all right, title and interest of Debtors in the Purchaser Purchased Assets, free and clear of all Interests (other than Assumed Liabilities).

7.      Injunction.  Except as expressly provided in the Purchaser APA or this Sale Order, effective upon the Closing all Persons and Entities (as those terms are defined under Section 101 of the Bankruptcy Code), including, but not limited to, all debt security holders, equity security holders, holders of any preferential purchase rights or similar rights, including, but not limited to tag along rights, drag along rights and co-sale rights, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons holding Interests (other than Assumed Liabilities) against or in Debtors or Debtors' interests in the Purchaser Purchased Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted,

whether arising prior to or subsequent to the commencement of Debtors' chapter 11 cases, whether imposed by agreement, understanding, law, equity, successor liability or otherwise), shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such Interests against Purchaser, or its affiliates, agents, advisors, representatives, officers, successors and assigns, the Purchaser Purchased Assets, or the interests of Debtors or Purchaser in such Purchaser Purchased Assets, including, without limitation, taking any of the following actions with respect to an Interest (other than, with respect to Purchaser only, the Assumed Liabilities): (a) commencing or continuing in any manner any action or other proceeding against such parties or the Purchaser Purchased Assets; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against such parties or the Purchaser Purchased Assets; (c) creating, perfecting or enforcing any liens, claims, encumbrances or other interests against such parties or the Purchaser Purchased Assets; (d) asserting a Claim as a setoff, right of subrogation or recoupment of any kind against any obligation due Purchaser or its affiliates, agents, advisors, representatives, officers, successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions contemplated or taken in respect thereof.  All persons are hereby enjoined from taking any action that would interfere with or adversely affect Debtors' ability to transfer the Purchaser Purchased Assets in accordance with the terms of the Purchaser APA and this Sale Order.  Following the Closing, no holder of an Interest (including as such term is used in section 363(f)) against Debtors shall interfere with Purchaser's title to or use and enjoyment of the Purchaser Purchased Assets.

8.    <u>Good Faith Buyer</u>.  The Purchaser APA has been entered into by Purchaser in good faith and Purchaser is a good faith buyer of the Purchaser Purchased Assets as that term is used in

section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization of the Sale provided herein shall neither affect the validity of the Sale nor the transfer of the Purchaser Purchased Assets to Purchaser, free and clear of Interests, unless such authorization is duly stayed before the Closing pending such appeal. Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

9.     No Bulk Sales/Bulk Sales Tax.  No bulk sales law or any similar law or bulk sales Tax of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchaser APA, the Sale Motion and this Sale Order.

10.     Fair and Equivalent Value.  The consideration provided by Purchaser for the Purchaser Purchased Assets under the Purchaser APA shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

11.     Transfer of Marketable Title.  Upon the Closing, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of Debtors' rights, title and interests in the Purchaser Purchased Assets and/or a bill of sale transferring good and marketable title in such Purchaser Purchased Assets to Purchaser at the Closing pursuant to the terms of the Purchaser APA, free and clear of all Interests (other than Assumed Liabilities).

12.     No Successor Liability.  The consummation of the Sale does not amount to a consolidation, merger or *de facto* merger of Purchaser and Debtors and/or its estate, there is no substantial continuity between Purchaser and Debtors, there is no continuity of enterprise between

Debtors and Purchaser, Purchaser is not a mere continuation of Debtors or its estate, and Purchaser does not constitute a successor to Debtors or its estate. Notwithstanding any state and/or federal law or any other law (whether in equity, common law or statutory law), upon the Closing, Purchaser's acquisition of the Purchaser Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of the Closing. Purchaser's operations shall not be deemed a continuation of Debtors' business as a result of the acquisition of the Purchaser Purchased Assets. The transfer of the Purchaser Purchased Assets to Purchaser, except as otherwise set forth in the Purchaser APA, does not, and will not, subject Purchaser to any liability whatsoever, with respect to operation of the Debtors' business prior to the Closing.

13.    <u>Assignment Procedures</u>.   The following "Assignment Procedures" are hereby approved:

a.    On September 4, 2019 and September 18, 2019, pursuant to the Bid Procedures Order, the Debtors served on Counterparties to executory contracts and unexpired leases the Notice of Potential Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Proposed Cure Amounts, Docket Nos. 47 & 70 (the "**Original Cure Notices**") identifying the name of each executory contract and/or unexpired lease to be assumed and assigned, the Counterparty and the proposed cure amount associated with such executory contract and/or unexpired lease.

b.    Pursuant to the Bid Procedures Order and the Original Cure Notices, each Counterparty to an executory contract and/or unexpired lease had until September 27, 2019 (the "**Objection Deadline**") to object to the assumption and assignment of its respective executory contract and/or unexpired lease on any grounds, including the Cure Amount stated in the Original Cure Notices, non-monetary defaults, adequate assurances of future performance, *etc*.

c.    Pursuant to the Purchaser APA, and without any Court order, the Purchaser may designate the Assigned Contracts to be assumed and assigned at any time prior to the Closing Date.  Upon Debtors' receipt of the designation of the Assigned Contracts, the Debtors shall file a notice with the Court (the "**Notice of Designation of Assigned Contracts**") identifying each Assigned Contract, the Counterparty and the Cure Amount associated with

such Assigned Contract.  The assumption and assignment of said Assigned Contracts is hereby authorized and approved consistent with the terms and conditions of the Purchaser APA and this Order.

d.      The Purchaser may add or remove Assigned Contracts from the Notice of Designation of Assigned Contracts at any time prior to closing, in which case, the Debtors shall file an Amended Notice of Designation of Assigned Contracts reflecting the addition or subtraction of any Assigned Contract. If an Assigned Contract is designated by the Purchaser and was not included in the Original Cure Notices, the Objection Deadline for the Counterparty to such newly added Assigned Contract(s) shall be extended to a date that is ten (10) days after the date the Notice of Designation of Assigned Contracts, or Amended Notice of Designation of Assigned Contracts, as the case may be, is served upon the Counterparty and the United States Trustee (the "**Extended Objection Deadline**").

e.      If a Counterparty did not, or does not, file an objection on or before the Objection Deadline or any applicable Extended Objection Deadline, it waived, or waives, any right to object to the assumption of its Assigned Contract by Debtors and the assignment of its Assigned Contract to Purchaser, and such Assigned Contract shall be deemed assumed and assigned as of the Closing Date.

f.      If a Counterparty files a timely objection to an Extended Objection Deadline and such objection is not otherwise resolved by the parties, the Court will resolve such objection at a hearing on a date designated by the Court.  To the extent said objection is not resolved prior to the Closing, Purchaser may, without further approval of the Court or notice to any party, elect to (i) not have Debtors assume and assign the additional Assigned Contract to it or (ii) have Debtors postpone the assumption of such Assigned Contract until the resolution of such objection; *provided that* Debtors, Purchaser, and the relevant Counterparty shall have authority to compromise, settle, or otherwise resolve any objection without further order of the Court, with any such agreed upon Cure Amount being paid to the Counterparty as a condition subsequent to such assumption and assignment.

g.      Any timely filed objection by a Counterparty to an Assigned Contract in accordance with the Bid Procedures Order and the Original Cure Notices, shall be deemed fully preserved and shall be considered a timely filed objection by such counterparty to the assumption and assignment of its Assigned Contract pursuant to the Purchaser APA.

h.      If a Counterparty's objection is resolved after the Closing Date and the relevant contract is to be assumed and assigned pursuant to such resolution, then such Counterparty's Assigned Contract will be deemed assumed and assigned as of the Closing Date.

i.      Upon assignment of any Assigned Contract, such Assigned Contract and any Counterparty to such Assigned Contract shall be subject to the terms of this Sale Order.

j.      Debtors' assumption of any Assigned Contract is subject to the consummation of the Purchaser Sale.

14.     <u>Authorization to Assign</u>.  Pursuant to section 365(f) of the Bankruptcy Code, and notwithstanding any provision of any contract governing the Purchaser Purchased Assets or any Assigned Contract to be assumed and assigned to Purchaser or applicable non–bankruptcy law that prohibits, restricts, or conditions the assignment of the Purchaser Purchased Assets or the Assigned Contracts, Debtors are authorized to (a) assign, sell and transfer the Purchaser Purchased Assets to Purchaser and (b) assume and assign the Assigned Contracts to Purchaser, which assignments shall take place on and be effective as of the Closing or as otherwise provided by a separate order of this Court.  Notwithstanding the foregoing, as of the date of entry of this Sale Order, if a Counterparty timely filed an objection in accordance with the Assignment Objection Procedures and such objection remains unresolved, or if such Counterparty's Objection Deadline has not yet passed, the assignment of such Counterparty's Assigned Contract shall be conditioned upon the resolution of such objection in accordance with the Assignment Objection Procedures.

a.      There shall be no accelerations, assignment fees, increases, or any other fees charged to Purchaser or Debtors as a result of the assumption and assignment of the Purchaser Purchased Assets and the Assigned Contracts.

b.      Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts to be assumed and assigned to Purchaser as of Closing. Notwithstanding the foregoing, unless required by Purchaser under the Purchaser APA, Debtors shall not be required by the Court to assume and assign

any Assigned Contracts, and, if no such assumption and assignment occurs, no Cure Amounts shall be due and no adequate assurance of future performance shall be required.

   c. Debtors are authorized to execute and deliver to Purchaser such agreements, documents and other instruments as may facilitate or document the sale, assignment, transfer, conveyance and delivery of the Assigned Contracts to Purchaser. Debtors shall file a final notice listing all Assigned Contracts as soon as practicable following the closing of the Sale.

  15. <u>Assigned Contracts</u>.  As of the Closing, subject to the provisions of this Sale Order, Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assigned Contracts to be assumed and assigned to Purchaser first arising and attributable to the time period occurring on or after the Closing Date and shall have all rights thereunder. Each Counterparty to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against Debtors or Purchaser, or the property of either of them, any assignment fee, default, breach or claim of pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Purchaser APA, including the Sale and the assumption and assignment of the Assigned Contracts. Any party that may have had the right to consent to the assignment of an Assigned Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to object to the assumption and assignment of such Assigned Contract in accordance with the Assignment Objection Procedures.

   a. Upon Closing, (i) all defaults (monetary and non-monetary) under the Assigned Contracts shall be deemed cured and satisfied in full through the payment of

the Cure Amounts, (ii) no other amounts will be owed by Debtors, its estate or Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assigned Contracts and (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against Debtors, its estate, Purchaser, or the Purchaser Purchased Assets, that any additional amounts are due or that any defaults exist under the Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing, whether declared or undeclared, or known or unknown. Purchaser's promise pursuant to the terms of the Purchaser APA to pay the Cure Amounts and to perform Debtors' obligations under the Assigned Contracts for the period on or after the Closing shall constitute adequate assurance of its future performance under the Assigned Contracts being assigned to it as of the Closing within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code.

b.    Upon assumption of the Assigned Contracts, such Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Sale Order, and shall be assigned and transferred to Purchaser notwithstanding any provision in such Assigned Contracts or other restrictions prohibiting assignment or transfer.    The assumption and assignment of the Assigned Contracts as authorized under this Sale Order will take effect as of the Closing. Furthermore, other than Assigned Contracts, no other executory contract or unexpired lease shall be deemed assumed by Debtors and assigned to Purchaser pursuant to section 365 of the Bankruptcy Code. The failure of Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or

conditions, or of Debtors' or Purchaser's rights to enforce every term and condition of such Assigned Contract.

        c.    All Counterparties to the Assigned Contracts to be assumed and assigned to Purchaser as of the Closing shall cooperate and expeditiously execute and deliver, upon the reasonable request of Purchaser, and shall not charge Debtors or Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

        16.    <u>Release of Interests</u>.  Effective upon the Closing, this Sale Order:  (a) is and shall be effective as a determination that all Interests (other than Assumed Liabilities) of any kind or nature whatsoever existing as to the Purchaser Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected; (b) is and shall be binding upon and shall govern the acts of all Persons and Entities (as those terms are defined in Section 101 of the Bankruptcy Code), including but not limited to, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchaser Purchased Assets conveyed to Purchaser, and all recorded Interests (other than Assumed Liabilities) against the Purchaser Purchased Assets shall be deemed stricken from such Persons' and/or Entities' records, official and/or otherwise.

17.     <u>Approval to Release Interests</u>.  If any person or entity that has filed financing statements, mortgages, mechanic's liens or other documents or agreements evidencing Interests in, Liens on, or claims against the Purchaser Purchased Assets shall not have delivered to Debtors before the Closing, in proper form for filing and executed by the appropriate parties, the appropriate documentation with respect to the release of such Interests, Debtors and Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchaser Purchased Assets. Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the Purchaser Purchased Assets other than the Assumed Liabilities. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

18.     <u>Allocation of Purchaser Purchased Assets</u>.  Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchaser Purchased Assets, including the Assigned Contracts, among its affiliates, designees, assigns, and/or successors, in a manner as it in its sole discretion deems appropriate, and to assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of any of the Purchaser Purchased Assets, including the Assigned Contracts, to its affiliates, designees, assignees and/or successors with all of the rights and protections accorded to Purchaser under this Sale Order and the Purchaser APA with respect thereto. Debtors shall cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.

19.    <u>Governmental Authorization to Effectuate Sale and Assignments</u>.  Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the transactions contemplated by the Purchaser APA. No governmental unit may revoke or suspend any lawful right, license, trademark or other permission relating to the use of the Purchaser Purchased Assets sold, transferred or conveyed to Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions. For the avoidance of doubt, the sale of the Purchaser Purchased Assets authorized herein shall be of full force and effect, regardless of whether Debtors or any of its affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

20.    <u>Authorization of Purchaser to Operate</u>. To the greatest extent available under applicable law and to the extent provided for under the Purchaser APA, Purchaser shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of Debtors with respect to the Purchaser Purchased Assets, and, to the greatest extent available under applicable law and to the extent provided for under the Purchaser APA, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing.

21.    <u>Inconsistencies with Prior Orders, Pleadings or Agreements</u>.  To the extent this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Debtors' chapter 11 cases, the terms of this Sale Order shall govern. To the extent there is any inconsistency between the terms of this Sale Order and the terms of the Purchaser APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

22.    <u>Binding Effect of Sale Order; Subsequent Orders</u>.    This Sale Order and the Purchaser APA shall be binding in all respects upon Debtors and all successors and assigns of the Debtors, their estates, all creditors of, and holders of equity interests in, Debtors, any holders of Liens, claims or other Interests in, against or on all or any portion of the Purchaser Purchased Assets (whether known or unknown), Purchaser and all successors and assigns of Purchaser, all successors and assigns to the Purchaser Purchased Assets and any trustee, examiner, "responsible person" or other fiduciary appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code. The Purchaser APA shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Sale Order, including the rights granted to Purchaser hereunder, shall remain effective and, notwithstanding such conversion or dismissal, shall remain binding on parties in interest.  This Sale Order shall not be modified by any chapter 11 plan(s) confirmed in these chapter 11 cases or any subsequent order(s) of this Court.

23.    <u>Failure to Specify Provisions</u>.  The failure specifically to include or make reference to any particular provisions of the Purchaser APA or any related ancillary document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchaser APA and all related ancillary documents are authorized and approved in their entirety.

24.    <u>Retention of Jurisdiction</u>.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Sale Order, including, without limitation, the authority to:  (i) interpret, implement and enforce the terms and provisions of this Sale Order (including the exculpation, release and injunctive provisions in this Sale Order) and the terms of

the Purchaser APA, all amendments thereto and any waivers and consents thereunder; (ii) protect Purchaser, or the Purchaser Purchased Assets, from and against any Interests (other than Assumed Liabilities); (iii) compel delivery of all Purchaser Purchased Assets to Purchaser; (iv) compel Debtors and Purchaser to perform all of their respective obligations under the Purchaser APA; and (v) resolve any disputes arising under or related to the Purchaser APA or the Sale.

25.     <u>Automatic Stay</u>.  Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchaser APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order.

26.     <u>No Material Modifications</u>.  The Purchaser APA and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby.

27.     <u>Immediate Effect</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. §158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, the Court expressly finds there is no reason for delay in the implementation of this Sale Order and, accordingly:  (i) the terms of this Sale Order shall be immediately effective and enforceable upon its entry and the fourteen (14) day stay provided in Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d) is hereby expressly waived and shall not apply; (ii) Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Sale Order; and

(iii) Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Sale Order.

28.    <u>Provisions Non-Severable</u>.  The provisions of this Sale Order are non-severable and mutually dependent.

29.    <u>Satisfaction of Conditions Precedent</u>.  Neither Purchaser nor Debtors shall have an obligation to close the Transactions until all conditions precedent in the Purchaser APA to each of their respective obligations to close the Transactions have been met, satisfied, or waived in accordance with the terms of the Purchaser APA.

30.    <u>FCC Regulatory Approval</u>. Notwithstanding any other provision of this Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of the Debtor in any federal license or authorization issued by the Federal Communications Commission ("**FCC**") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

31.    <u>Consumer Privacy Ombudsman</u>. The Debtors' customers' personally identifiable information (the "**Customer PII**") may be sold and transferred to Purchaser if the Purchaser demonstrates it is a "Qualified Buyer"[5] and the Purchaser complies with the terms and conditions of paragraphs 32 through 34.

32.    The Consumer Privacy Ombudsman appointed in these cases (the "**Ombudsman**") has found that the Purchaser is a Qualified Buyer of the Customer PII.  Purchaser agrees to be bound by and substantially meet the standards established by the Debtors' privacy policy, including the terms under the section titled "The News-Gazette Online Privacy Policy," and comply with applicable privacy laws and regulations governing the transfer, storage, maintenance, and access to Customer PII.   The Ombudsman has also found that the relevant privacy policies that the Purchaser intends to apply to Customer PII substantially meets the standards established by News-Gazette's privacy policy.  The Purchaser agrees to provide notice to any consumer whose Customer PII is being sold and transferred to it (the "**Notice**").  The Notice may be provided by a posting on the Debtors' website or in any initial contact email or communication with customers.

33.    The Purchaser further agrees to separately provide consumers with an opportunity to opt-out from having their information used by Purchaser as part of the notification process, to the extent required by law.  The option to opt-out will not affect any information obtained independently by the Purchaser.

34.    The Purchaser shall separately file a certification of the conditions set forth in paragraphs 32 and 33 within 30 days confirming its compliance with the conditions set forth herein, or the Court may direct the Ombudsman to file a final report confirming such compliance.

---

[5]    A "**Qualified Buyer**" means an entity that: (a) is engaged in substantially the same lines of business as the Debtors; (b) expressly agrees to be bound by substantially similar terms as contained in Debtors' existing privacy policy; and (c) agrees to be responsible for any future violation of the privacy policy occurring after the purchase of the Customer PII.

35.    Subject to assignment of the Music License to the Purchaser (see Cure Schedule filed at Docket No. 116), (i) SoundExchange Inc. ("**SoundExchange**") shall hold a cure claim for amounts due and owing as of August 30, 2019 in the amount of $1,697.12 (the "**Cure Payment**"); (ii) the Purchaser shall pay the Cure Payment to SoundExchange within ten (10) business days of the closing of the sale and (iii) the Purchaser shall pay all amounts due and owing SoundExchange after August 30, 2019 in the ordinary course of business, pursuant to the licenses set forth in sections 112 and 114 of the Copyright Act, 17 U.S.C. §§ 112(e) and 114 (d)(2) and pursuant to 37 C.F.R. §§ 380.2 and 380.10.

**Dated: October 2nd, 2019**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**